COLEMAN ET AL., APPELLEES, *v.* PORTAGE COUNTY ENGINEER, APPELLANT.

[Cite as *Coleman v. Portage Cty. Engineer,*

**133 Ohio St.3d 28, 2012-Ohio-3881.**]

*Political-subdivision immunity—R.C. Chapter 2744—Upgrading sewers involves construction and design and is therefore a governmental, not a proprietary, function—Judgment reversed.*

(No. 2011-0199—Submitted May 22, 2012—Decided August 29, 2012.)

APPEAL from the Court of Appeals for Portage County, No. 2010-P-00016,

191 Ohio App.3d 32, 2010-Ohio-6255.

_____

**O'CONNOR, C.J**.

**{¶ 1}** In this appeal, we address whether "upgrading" a storm-sewer system is a governmental or proprietary function of a political subdivision within the meaning of R.C. 2744.01 and whether failure to "upgrade" subjects that political subdivision to liability under R.C. 2744.02(B)(2). For the reasons that follow, we hold that because upgrading involves construction and design, such upgrading is a governmental, not a proprietary, function. Therefore, we reverse the judgment of the court of appeals that holds otherwise.

## BACKGROUND

**{¶ 2}** Appellees, Barbara Coleman and Robert Coleman, own real property in Rootstown, Ohio. They sued appellant, the Portage County Engineer, complaining that their property was flooded in 1982, 1989, 2003, 2005, and 2009 and the water caused damage to their real and personal property.[1] The Colemans averred, "on information and belief," that

_____

1. Because this case was resolved in the trial court on a motion to dismiss, we accept as true all material allegations in appellees' complaint and construe all reasonable inferences in their favor.

the flooding is a result of the defendant collecting drainage water from drainage ditches along State Route 44 in Rootstown, and discharging same through a piping system that runs across the adjacent Rootstown Public School System. The piping system is unable to accommodate all the drainage water, and accordingly the water overflows from the culverts in front of and behind the plaintiff's [sic] residence.

They further alleged that their property will continue to be flooded,

due to the fact that the defendant has neglected or failed to construct a drainage plan or water drainage system to properly discharge the water and prevent it from collecting on the plaintiff's [sic] property and causing significant damages. The defendant also has failed to maintain the piping system that runs through the adjacent Rootstown Public School property to the storm sewer next to the Property.

Whether Portage County has improperly maintained the storm sewers or failed to appropriately upgrade them has not been investigated. At oral argument, the parties agreed that the cause of the storm-sewer backup is unclear.

{¶ 3} The first count of the Colemans' complaint alleges that Portage County "breached the duty of due care owed to the plaintiffs in designing, constructing and maintaining the water piping system that collects and discharges

---

*Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988).

water on the plaintiff's property." The Colemans also asserted that "[d]efendant has been notified on numerous occasions that they [sic] created a nuisance causing flooding upon plaintiff's [sic] property, and defendant has refused, continues to refuse, and has been unwilling to abate the nuisance and resolve the repetitive flooding on the plaintiff's [sic] property."

{¶ 4} The second count pleaded that "the defendants [sic] be directed to make modifications to the water piping system that is necessary to protect the plaintiff [sic] from further flooding" and that "the court enjoin defendant, and require the defendant to install adequate pipes and culverts, in order to prevent future and continued damage from flooding to plaintiffs' property by defendant."

{¶ 5} The Portage County Engineer moved to dismiss the complaint, arguing that the Colemans had "failed to show that the [county engineer] is not immune from their claims" and "have failed to show that they have pled sufficient facts to show negligent maintenance of the pipeline." The county engineer asserted that even assuming that the drainage system was improperly designed, constructed, or installed, he is entitled to immunity under R.C. Chapter 2744, which addresses political-subdivision liability for torts. The trial court agreed, holding, "The Portage County Engineer is immune from litigation based upon claims for negligent planning, design, and construction of the water pipelines referred to the in the Plaintiffs' pleadings."

{¶ 6} On the Colemans' appeal from that order, the Eleventh District Court of Appeals affirmed in part and reversed in part. In affirming in part, the court wrote, "[The Colemans] argue that the trial court erred in dismissing their claim in Count I alleging negligent design, planning, and construction of the pipeline based on political-subdivision immunity because, they suggest, this claim alleged the negligent performance of a proprietary function, which is an exception to political subdivision immunity pursuant to R.C. 2744.02(B)(2). However, [the Colemans] fail to cite any authority for the proposition that the design, planning,

or construction of a sewer system is a proprietary function, in violation of App. R. 16(A)(7). Moreover, [the Colemans] present no argument that the same constitutes a proprietary function, in violation of the same appellate rule. For this reason alone, [the Colemans'] argument is not well taken." *Coleman v. Portage Cty. Engineer*, 191 Ohio App.3d 32, 2010-Ohio-6255, 944 N.E.2d 756, ¶ 18 (11th Dist.).

{¶ 7} The court of appeals also relied on its own precedent, *Moore v. Streetsboro*, 11th Dist. No. 2008-P-0017, 2009-Ohio-6511, ¶ 42, in holding that the county engineer cannot be held liable in tort in this case. Applying R.C. Chapter 2744, which immunizes certain governmental functions, including the decision whether to upgrade inadequate sewers, from tort liability, the court held that upgrading storm sewers is a governmental function. *Coleman* at ¶ 20. Therefore, the Portage County engineer "is immune from liability for [his] alleged failure to design and construct an adequate storm-sewer system." *Id.*

{¶ 8} Nevertheless, the court of appeals agreed with the Colemans that their claim was not barred by political-subdivision immunity to the extent that the county had negligently maintained the sewer system. *Id*. at ¶ 32. For this holding, the court relied on *Moore* and R.C. 2744.01(G)(2)(d), which includes as a political subdivision's proprietary function the "maintenance, destruction, operation, and upkeep of a sewer system."

{¶ 9} We accepted the Portage County Engineer's discretionary appeal, *Coleman v. Portage Cty. Engineer*, 128 Ohio St.3d 1458, 2011-Ohio-1829, 945 N.E.2d 522, which asserts a single proposition of law: "A political subdivision's failure to upgrade the capacity of an inadequate sewer system is not a proprietary function within the meaning of R.C. 2744.01(G)(2)(d) so as to subject a political subdivision to liability under R.C. 2744.02(B)(2). The upgrade of sewer system capacity is an immune governmental function under R.C. 2744.01(C)(2)(i). (R.C. 2744.01(G)(2)(d) and R.C. 2744.01(C)(2)(i) interpreted and applied) ." We agree

4

that upgrading a sewer system is construction and design, not upkeep, and accordingly, we reverse the judgment of the court of appeals.

### ANALYSIS

*Ohio's Political Subdivision Tort Liability Act*

**{¶ 10}** R.C. Chapter 2744, Ohio's Political Subdivision Tort Liability Act, has been in place for more than 25 years and confers broad immunity on the state's political subdivisions. R.C. 2744.02(A)(1) states:

> Except as provided in division (B) of this section*, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property* allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision *in connection with a governmental or proprietary function.*

(Emphasis added.)

**{¶ 11}** But the legislature has imposed exceptions to this general rule. Relevant here is the exception in R.C. 2744.02(B)(2), which declares that as a rule,

> political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees *with respect to proprietary functions of the political subdivisions.*

(Emphasis added.)

**{¶ 12}** R.C. 2744.01(C)(2)(l) identifies as a governmental function "the provision or nonprovision, planning or design, construction, or reconstruction of a

public improvement, including, but not limited to, a sewer system," making these responsibilities immune from political-subdivision liability. By contrast, R.C. 2744.01(G)(2)(d) identifies "the maintenance, destruction, operation, and upkeep of a sewer system" as a proprietary function for which civil liability may attach.

{¶ 13} We often have interpreted and explained the purpose of this statutory scheme:

> "[T]he protections afforded to political subdivisions and employees of political subdivisions by this act are urgently needed in order to ensure the continued orderly operation of local governments and the continued ability of local governments to provide public peace, health, and safety services to their residents." Am.Sub.H.B. No. 176, Section 8, 141 Ohio Laws, Part I, 1733. We noted in *Hubbell* [*v. Xenia*], 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, that " '[t]he manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions.' " Id. at ¶ 23, quoting *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105.

*Summerville v. Forest Park,* 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 38.

{¶ 14} We also held:

> " '[D]etermination of whether a political subdivision is immune from liability is usually pivotal to the ultimate outcome of a lawsuit. Early resolution of the issue of whether a political subdivision is immune from liability pursuant to R.C. Chapter

2744 is beneficial to both of the parties. If the appellate court holds that the political subdivision is immune, the litigation can come to an early end, with the same outcome that otherwise would have been reached only after trial, resulting in a savings to all parties of costs and attorney fees. Alternatively, if the appellate court holds that immunity does *not* apply, that early finding will encourage the political subdivision to settle promptly with the victim rather than pursue a lengthy trial and appeals. Under either scenario, both the plaintiff and the political subdivision may save the time, effort, and expense of a trial and appeal, which could take years.' " (Emphasis sic.) [*Hubbell*] at ¶ 25, quoting *Burger v. Cleveland Hts.* (1999), 87 Ohio St.3d 188, 199-200, 718 N.E.2d 912 (Lundberg Stratton, J., dissenting).

*Summerville*, ¶ 39.

{¶ 15} Our legislature has generally shielded political subdivisions from tort liability. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 733 N.E.2d 1141 (2000); R.C. 2744.02(A)(1). But that immunity is not absolute, and one exception to immunity is the political subdivision's "maintenance, destruction, operation, and upkeep of a sewer system," which is identified as a proprietary function. R.C. 2744.01(G)(2)(d). R.C. 2744.02(B)(2) provides that political subdivisions are liable for injury, death, or property loss caused by the subdivision's employees' "negligent performance with respect to proprietary functions."

{¶ 16} With the statutory framework in mind, we turn to the specific issue before us.

*Governmental Function or Proprietary Function?*

{¶ 17} " 'Functions which can be categorized as either governmental or proprietary * * * are clearly intended for use as a guide in determining whether, in a particular case, the activity attributed to a subdivision falls with the ambit of the statute.' " *Spitzer v. Mid Continent Constr. Co., Inc.*, 8th Dist. No. 89177, 2007-Ohio-6067, ¶ 18, quoting *Franks v. Sandusky Bd. of Trustees*, 6th Dist. No. S-91-18, 1992 WL 66561, *3 (Mar. 31, 1992).

{¶ 18} The question is whether failure to keep a storm-sewer system functional is a "design, construction, or reconstruction * * * [of] a sewer system" and therefore a governmental function that is immunized from tort lawsuits under R.C. 2744.01(C)(2)(l), or sewer "maintenance, * * * operation, and upkeep" under R.C. 2744.01(G)(2)(d), a proprietary function for which political-subdivision tort liability is allowed.

{¶ 19} Our courts of appeals have developed a body of law holding that subdivisions are immune from claims that flow from the design and construction of a sewer system. *Spitzer* at ¶ 20 ("Ohio courts have found that municipalities are immune from suit when flooding to private property was a result of an improperly designed sewer that was inadequate to handle increased storm runoff"). See also *Ferguson v. Breeding*, 4th Dist. No. 99 CA 22, 2000 WL 1234262, *6 (Aug. 25, 2000). Reviewing the Colemans' claims for relief, the court of appeals held, " 'It is clear that the city is immune from its failure to design and construct an adequate sewer system.' " *Coleman*, 191 Ohio App.3d 32, 2010-Ohio-6255, 944 N.E.2d 756, ¶ 19, quoting *Moore,* 2009-Ohio-6511, ¶ 45.

{¶ 20} To the extent that the court of appeals in this case held that the county enjoyed immunity for the claims arising from the Colemans' assertions that the county was negligent in the design, planning, and construction, we affirm.

But we disagree with the appellate court's reasoning in holding that the Colemans' claims of failure to upgrade the sewer system were not barred.

**{¶ 21}** In so holding, the court of appeals rejected the county's assertion that a "negligent-maintenance claim necessarily refers to a failure to install a larger pipeline system," which is a governmental function. *Coleman*, 191 Ohio App.3d 32, 2010-Ohio-6255, 944 N.E.2d 756, ¶ 44. It held:

> "If, indeed, the city is responsible for that pipeline, then 'the failure to upgrade sewers that are inadequate to service upstream property owners despite sufficient notice of the inadequacy can be best be described as a failure to maintain or upkeep the sewer.' *H. Hafner & Sons Inc. v. Cincinnati Metropolitan Sewer Dist.* (1997), 118 Ohio App.3d 792, 797 [694 N.E.2d 111]; see, also, *Hedrick v. Columbus* (Mar. 30, 1993), 10th Dist. Nos. 92AP-1030 and 92AP-1031 [1993 WL 104713]. 'If proven, this failure would constitute the breach of a duty arising out of a proprietary function and would expose the city to liability under R.C. 2744.02(B)(2).' * * * Id."

*Coleman*, ¶ 45, quoting *Moore*, 2009-Ohio-6511, ¶ 59.

**{¶ 22}** We disagree.

**{¶ 23}** Initially, we observe that the General Assembly did not use the term "upgrade" in writing R.C. Chapter 2744. Courts must abstain from inserting words into a statute that were not placed there by the General Assembly. *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.,* 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.,* 69 Ohio St.3d 217, 220, 631 N.E.2d 150 (1994). It is not proper for courts to read "upgrade" into the statute.

**{¶ 24}** Moreover, the failure to upgrade is different from the failure to maintain or upkeep. To upgrade means "[t]o exchange a possession for one of greater value or quality; trade up." *American Heritage Unabridged Dictionary* 1890 (4th Ed.2000). "Upkeep," however, means "[m]aintenance in proper operation, condition, and repair." Id. Our courts of appeals have recognized this distinction.

**{¶ 25}** For example, in *Murray v. Chillicothe*, a landscaper sued the city after his foot fell through a storm-sewer grate located in a public street. The landscaper claimed that the grate had been poorly maintained. 164 Ohio App.3d 294, 2005-Ohio-5864, 842 N.E.2d 95, ¶ 1, 3. He brought a negligence claim against the city, but the trial court granted summary judgment in the city's favor, holding that the city was immune from liability. Id. at ¶ 9.

**{¶ 26}** The Fourth District Court of Appeals affirmed, holding:

Murray argues that his injury occurred because of the city's failure to maintain the storm-sewer grate. The city disagrees, arguing that the injury stems from the design of the storm-sewer grate. It contends that Murray's injury occurred because of the width of the grate's openings, which is "simply a matter of the design of the grate."

Webster's Dictionary defines "maintenance" as the "act of maintaining or state of being maintained." Webster's New College Dictionary (1999) 660. It defines "maintain" as "To preserve or keep in a given existing condition, as of efficiency or good repair." Id. The deposition testimony presented indicates that the accident in this case occurred because the openings in the storm-sewer grate were too wide. There is no evidence that the four-inch openings existed because the grate was in a state of disrepair. Rather, the

evidence indicates that the grate was designed with four-inch openings. Because Murray's injury did not result from the catch-basin grate's being in a state of disrepair, we cannot say that this case involves the maintenance of a storm-sewer system. In most instances, the government's duty to maintain a structure does not include the duty to upgrade it to current construction standards. See *Treese v. Delaware* (1994), 95 Ohio App.3d 536, 543 [642 N.E.2d 1147], stating in the context of highways that maintenance involves only the preservation of existing facilities, and not the initiation of substantial improvements (but leaving unanswered the issue of whether maintenance may include upgrading where a nuisance condition has arisen). See, also, *Thomas v. Cuyahoga Cty. Bd. of Commrs.,* Sept. 30, 1993, Cuyahoga County Court of Appeals Case No. 62949, 1993 WL 389781, stating that the board had no duty to upgrade a highway median barrier as technology developed.

*Id.* at ¶16-17.

{¶ 27} The Fourth District recognized that injury resulting from an antiquated storm-sewer design has different legal significance from injury resulting from improper storm-sewer maintenance. The design, pursuant to R.C. 2744.01(C)(2)(l), is a governmental function, and under R.C. 2744.02, no liability can attach to the political subdivision for obsolete design. Id. at ¶ 18. Put another way, "a private sewer system with a design flaw does not convert that design flaw into a maintenance responsibility." Id.

{¶ 28} The analysis in *Murray* is consistent with that in *Zimmerman v. Summit Cty.,* 9th Dist. No. 17610, 1997 WL 22588 (Jan 15, 1997). There, homeowners sued the county, alleging that the county had dumped sewage into a

creek that ran through their property. Id. at *1. The county admitted that during severe rain storms, it pumped rain water and sewage from its sewer system into the creek to prevent sewage backups into basements. Id. at *2. It contended that "periodic pumping was necessary because the sewer system, as it was designed and constructed over twenty years before, could not handle all the rain water and sewage that currently pass through it" and noted that it had a permit from the Ohio Environmental Protection Agency to pump the sewage into the stream. Id.

{¶ 29} The trial court rejected the county's claim of immunity, but the court of appeals reversed. It held:

> Plaintiffs' claimed injuries and losses * * * were not caused by [the county's] maintenance and operation of its sewer system. Unlike other cases in which Ohio courts have recognized that actions taken with respect to sewer systems were proprietary in nature, plaintiffs' claimed injuries and losses did not arise from [the county's] failure to repair damage to the system, to inspect it, to remove obstructions, or to remedy general deterioration. See *Doud v. Cincinnati* (1949), 152 Ohio St. 132 [87 N.E.2d 243] (city allegedly failed to detect deterioration of sewer system) and *Nice v. Marysville* (1992), 82 Ohio App.3d 109 [611 N.E.2d 468] (city failed to detect and repair damage to sewer system). Instead, they resulted from [the county's] original design and construction of the sewer system. As evidenced by [the county's environmental services director's] affidavit, [the county's] decision to pump sewage and rain water into the stream was a response to the sewer system's inability as designed and constructed to handle the volume of materials that currently pass through it. This was not a problem that [the county] could remedy through routine

maintenance. It would require extensive redesigning and reconstructing of the system to meet current demands.

Id. at *3.

{¶ 30} We find that the better-reasoned approach, and the one consistent with the immunity statute's wording and the General Assembly's intent, is that of the Fourth and Ninth District Courts of Appeals in *Murray* and *Zimmerman.* As the Second District recently explained, "A complaint is properly characterized as a maintenance, operation, or upkeep issue when 'remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration.' *Essman* [*v. Portsmouth,* 4th Dist. No. 09CA3325, 2010-Ohio-4837] at ¶ 32. But the complaint presents a design or construction issue if 'remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system.' *Essman* at ¶ 32–33." (Brackets sic.) *Guenther v. Springfield Twp. Trustees,* 2d Dist. No. 2010-CA-114, 2012-Ohio-203, 970 N.E.2d 1058, ¶ 18. We agree.

{¶ 31} Although creative, the Colemans' attempt to characterize their claims as ones based on maintenance fails. For purposes of R.C. Chapter 2744, a claim based on a failure to upgrade is a claim based on a failure of design and construction, for which political subdivisions enjoy immunity, and not a claim based on a failure to properly maintain, for which political-subdivision liability may be extant.

{¶ 32} In so holding, we are not unmindful that damages suffered by homeowners like the Colemans can be devastating to property and possessions, as well as physical and mental health. But the same is true for many other claims for which immunity attaches.

**{¶ 33}** And we recognize that property owners have little control over the quality of storm and sewer systems to which their homes are attached. But absent amendment to R.C. Chapter 2744 or other legislative action, relief does not lie in suits against political subdivisions based on a failure to upgrade the sewer system.

Judgment reversed.

LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents and would affirm the judgment of the court of appeals.

_____

UAW-GM Legal Services Plan and Darrell D. Maddock, for appellees.

Mazanec, Raskin & Ryder Co., L.P.A., John T. McLandrich, and Frank H. Scialdone; and Victor Vigluicci, Portage County Prosecuting Attorney, and Leigh S. Prugh, Assistant Prosecuting Attorney, for appellant.

Roetzel & Andress, L.P.A., and Stephen W. Funk, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Isaac, Brant, Ledman & Teetor, L.L.P., Mark Landes, and Scyld D. Anderson, urging reversal for amici curiae County Commissioners Association of Ohio, County Engineers Association of Ohio, County Sanitary Engineers Association, County Risk Sharing Authority, Metropolitan Sewer District of Greater Cincinnati, Ohio Municipal League, Ohio Township Association, Coalition of Large Urban Townships, and Association of Ohio Metropolitan Wastewater Agencies.

_____