[Cite as *Glover v. Columbus*, 2018-Ohio-4743.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barbara E. Glover et al., | : | |
| Plaintiffs-Appellees, | : | |
| | | No. 17AP-332 |
| v. | : | (C.P.C. No. 16CV-4428) |
| City of Columbus, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

# D E C I S I O N

## Rendered on November 27, 2018

**On brief:** *Walton + Brown, LLP, Chanda L. Brown,* and *Sean L. Walton,* for appellees*.* **Argued:** *Chanda L. Brown.*

**On brief:** *Zach Klein,* City Attorney, *Janet R. Hill Arbogast,* and *Sarah L. Harrell,* for appellant. **Argued:** *Janet R. Hill Arbogast.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, the City of Columbus ("city"), appeals a judgment of the Franklin County Court of Common Pleas that denied the city's motion for summary judgment. The city argued that it was entitled to immunity pursuant to Ohio Revised Code Chapter 2744. For the following reasons, we reverse the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} For purposes of this appeal, the following are the relevant facts and procedural history. The city began a capital improvements project, the Johnstown Road Area Waterline Improvements Project ("the project"), in appellees' neighborhood in February 2014. Defendant Darby Creek Excavating, Inc. ("Darby Creek") was awarded work as the general contractor and began work on March 13, 2014. The project included

replacing approximately 10,650 feet of water lines on Johnstown Road, Cassady Avenue, Sixth Avenue, Parkview Avenue, Columbia Avenue, Drexel Avenue, and Northview Boulevard. This capital improvements project was constructed from February 2014 to April 2015.

{¶ 3} Plaintiffs-appellees, Barbara Glover and her husband Harold Glover, filed this lawsuit on May 6, 2016, naming the city and Darby Creek as defendants. The complaint alleges that Barbara Glover was injured in a trip and fall on February 18, 2015, while taking out the trash and walking on the street outside her home located at 644 Northview Boulevard in Columbus, Ohio. The complaint asserts that she tripped and fell "in a huge pot-hole/pit that was partially filled with gravel and covered in snow." (Compl. at ¶ 7.) Appellees allege that the "pit and gravel had been created as a result of maintenance work being done on the sewage system near [their] home by * * * the City [and] Darby Creek." (Compl. at ¶ 10.)

{¶ 4} On March 13, 2017, Darby Creek filed a motion for summary judgment arguing that "[n]o evidence exists that [it] breached any duty owed to Plaintiffs, or that any breach was a proximate cause of Plaintiffs' injuries." (Def. Darby Creek's Mot. at 4.) On the same date, the city filed a motion for summary judgment based on (1) its entitlement to immunity from appellees' claims pursuant to Ohio Revised Code Chapter 2744, and (2) the lack of any duty owed or breached by the city to appellees.

{¶ 5} The trial court issued a journal entry on April 14, 2017, which, (1) granted Darby Creek's motion for summary judgment, and (2) denied the city's motion for summary judgment on appellees' claims. In regard to Darby Creek, the trial court found that:

> Plaintiffs have not offered any Rule 56 evidence showing the existence of a hole made by Darby Creek while they had constructive possession of the street and adjacent property that could be found to have proximately caused Ms. Glover's fall.
>
> Darby Creek did not breach any duty owed to plaintiffs, nor did its actions or omissions proximately cause Ms. Glover to fall on February 18, 2015. Accordingly, Defendant Darby Creek's motion is **GRANTED**. It is **DISMISSED** from this lawsuit.

(Emphasis sic.) *Id.* at 6.

{¶ 6} In regard to the city, the trial court stated the law in this area and found that:

"The determination as to whether a political subdivision is immune from suit is purely a question of law properly determined by a court prior to trial and preferable on a motion for summary judgment." *Martin v. City of Gahanna*, 10th Dist. No. 06AP-1175, 2007-Ohio-2651, 2007 Ohio App. LEXIS 2449, ¶ 9 (quoting *Summerville v. Columbus*, 10th Dist. No. 04AP-1288, 2005-Ohio-5158, ¶ 12). "In reviewing a claim of political subdivision liability, R.C. 2744.02(A)(1) directs [the court] to begin with a presumption of immunity. R.C. 2744.02(A)(1) sets forth the general rule that a 'political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act of omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.' The plaintiff must then present evidence that one or more of the exceptions to immunity set forth in R.C. 2744.02(B) apply. In order for certain of the exceptions to apply, the court must determine whether the case involves a governmental or a proprietary function. If any of the exceptions are found to apply, the political subdivision may assert an affirmative defense set forth in R.C. 2744.03(A)." *Martin* at ¶ 14.

The City argues that R.C. 2744.01(C)(2)(l) applies, and this is a "governmental function," making it immune. That subsection states that "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system" is a "governmental function." Plaintiffs contend that R.C. 2744.01(G)(2)(c) applies instead, and this is a "proprietary function," meaning that the City is not immune. That subsection states that "[t]he establishment, maintenance, and operation of a utility, including, but not limited to, ...a municipal corporation water supply system" is a "proprietary function."

Maintaining water lines is a proprietary function under R.C. 2744.01(G)(2)(c). The specific controls over the more general language in the immunity statute. Accordingly, the City of Columbus is not immune.

* * *

Questions of fact remain as to whether the City breached a duty owed to plaintiffs and whether that breach proximately caused Ms. Glover's fall and subsequent injuries. Accordingly, the City's motion is **DENIED**.

(Emphasis sic.) *Id.* at 6-8.

{¶ 7} The city's appeal, which was filed on May 5, 2017, is taken pursuant to R.C. 2744.02(C), based on the trial court's denial of the city's motion for summary judgment based on immunity.

## II. ASSIGNMENT OF ERROR

{¶ 8} Appellant assigns a single assignment of error for our review:

> The trial court erred when it denied the motion for summary judgment filed by the City of Columbus, thereby denying the City the benefit of immunity.

## III. DISCUSSION

{¶ 9} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* Once the moving party has supported its contention that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law, the burden is on the nonmoving party to go beyond the "mere allegations or denials of the party's pleadings," and to set forth specific facts, by affidavit or by other appropriate evidence, "showing that there is a genuine issue for trial." Civ.R. 56(E); *Munday v. Village of Lincoln Hts.*, 1st Dist. No. C-120431, 2013-Ohio-3095, ¶ 17.

{¶ 10} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). *See Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).

{¶ 11} The only issue before this court is whether or not the city is immune under R.C. Chapter 2744. Appellees do not dispute that the city is a political subdivision to which the general rule of immunity set forth in R.C. 2744.02(A)(1) applies. Appellees argue, however, that the exception to immunity contained in R.C. 2744.02(B)(2) applies. That exception states in part that, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." *Id.* The determinative issue is whether the city's project which replaced water mains and lines is a governmental or proprietary function.

{¶ 12} The city argues that R.C. 2744.01(C)(2)(l) applies, and therefore this project is a "governmental function," making it immune. That subsection states that "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system" is a "governmental function." *Id.* Appellees contend that R.C. 2744.01(G)(2)(c) applies instead, and this project is a "proprietary function," meaning that the city is not immune. That subsection states that "[t]he establishment, maintenance, and operation of a utility, including, but not limited to * * * a municipal corporation water supply system" is a "proprietary function." *Id.*

{¶ 13} Appellees argue that the project was a proprietary function because it involved the maintenance and upkeep of a sewer system, and/or the establishment, maintenance and operation of a municipal corporation water supply system. The trial court held that "[m]aintaining water lines is a proprietary function under R.C. 2744.01(G)(2)(c). The specific controls over the more general language in the immunity statute. Accordingly, the City of Columbus is not immune." (Apr. 14, 2017 Journal Entry at 7.) The city disagrees with the trial court and cites our case of *Repasky v. Gross,* 10th Dist. No. 12AP-752, 2013-Ohio-2516, for the proposition that the replacement of water mains and storm sewers is a governmental function. *Id.* at ¶ 13. We agree with the city.

{¶ 14} In *Repasky,* the plaintiff was injured when she and a companion rode a tandem bicycle across an area of road construction. The road construction was part of a project that consisted of water main and storm sewer repair and replacement, as well as road construction and paving. *Id.* at ¶ 2. The plaintiff rode over a two-foot to four-foot wide cut in the pavement. "The cut resulted from a trench that was previously dug to install a

replacement storm sewer line. That portion of the line was completed and the trench was backfilled with gravel and stone to grade level. The roadway had not yet been repaved." *Id.* at ¶ 3.

{¶ 15} Like the appellees in this case, the plaintiff in *Repasky* argued that the city of Upper Arlington was engaged in a proprietary function since the construction project involved the maintenance and upkeep of a sewer system and the "establishment, maintenance and operation of a municipal corporation water supply system." *Id.* at ¶ 12. However, we held that "[t]he replacement of a storm sewer line constitutes the construction or reconstruction of a sewer system, not the maintenance and upkeep of a sewer system nor the maintenance of a water supply system." *Id.* at ¶ 13. Consequently, Upper Arlington was engaged in a governmental function and was entitled to immunity. *Id.* Our application of *Repasky* to the present case yields the same result.

{¶ 16} Our review shows that the project at issue in this case was not the routine maintenance of water lines or the repair of a water main break. The project involved a decision to completely reconstruct, update, or upgrade its water supply system in appellees' neighborhood by completely replacing the water mains and lines. The city retained an engineer to produce a detailed design for the project, then solicited bids and awarded the construction contract in the amount of $2,296,930.08 to Darby Creek. The construction project included replacing old water mains under the streets (which necessitated digging trenches in the streets), replacing water lines and water service lines, filling in the trenches, and repaving the streets. The project included replacing approximately 10,650 feet of water lines, replacing water mains under the streets, and replacing water service lines. This capital improvements project took over one year to complete, from February 2014 to April 2015.

{¶ 17} Since the city was involved in the construction or reconstruction of the water supply system, it was engaged in a governmental function and is immune from liability pursuant to R.C. 2744.02(A)(1). The plain language of R.C. 2744.01(C)(2)(l) also supports the city's position. "[T]he * * * construction, or reconstruction of a public improvement, including, but not limited to, a sewer system" is a governmental function. *Id.*

{¶ 18} Other appellate courts have reached the same conclusion as this court in similar cases. "Municipal decisions regarding updating or upgrading, rather than simple

maintenance and repair of existing systems have been held to be a governmental function to which immunity applies." *Matter v. Athens*, 4th Dist. No. 13CA20, 2014-Ohio-4451, ¶ 22, citing *Essman v. Portsmouth*, 4th Dist. No. 09CA3325, 2010-Ohio-4837, ¶ 46. "[A] political subdivision's decision regarding an upgrade of its sewer system [or water supply system] is a governmental function. A decision to upgrade requires a political subdivision to weigh various considerations, including the availability of fiscal resources, the use and acquisition of additional equipment, and the overall design of the system." *Essman* at ¶ 44. *See also Smith v. Stormwater Mgt. Div.*, 111 Ohio App.3d 502, 507 (1st Dist.1996). Since "upgrading involves construction and design, such upgrading is a governmental, not a proprietary, function." *Coleman v. Portage Cty. Engineer,* 133 Ohio St.3d 28, 2012-Ohio-3881, ¶ 1. The Supreme Court of Ohio adopted the reasoning of the *Essman* court in finding that "the complaint presents a design or construction issue if 'remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system.' " *Coleman* at ¶ 30, quoting *Guenther v. Springfield Twp. Trustees,* 2d Dist. No. 2010-CA-114, 2012-Ohio-203, ¶ 18.

{¶ 19} The application of *Repasky* to this case is dispositive. The city was involved in a construction project that replaced water mains and connection lines. As with the replacement of a sewer line, the replacement of water mains and lines "constitutes the construction or reconstruction of a [water supply system], not the maintenance and upkeep of a * * * water supply system." *Id.* at ¶ 13. Since the city was involved in the construction or reconstruction of the water supply system, it was engaged in a governmental function and is immune from liability pursuant to R.C. 2744.02(A)(1).

## IV. DISPOSITION

{¶ 20} For the foregoing reasons, we sustain the city's sole assignment of error. We reverse the judgment of the Franklin County Court of Common Pleas and this matter is remanded for further proceedings consistent with this decision.

*Judgment reversed; case remanded.*

BROWN, P.J. and DORRIAN, J., concur.

_____