[Cite as *Eikenberry v. Municipality of New Lebanon*, 2021-Ohio-453.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| KEVIN EIKENBERRY | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28856 |
| | : | |
| v. | : | Trial Court Case No. 2018-CV-3254 |
| | : | |
| MUNICIPALITY OF NEW LEBANON, et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of February, 2021.

. . . . . . . . . . .

LOWELL T. WOODS, JR., Atty. Reg. No. 0068768 & JENNIFER D. BRUMBY, Atty. Reg. No. 0076440, 40 North Main Street, Suite 1700, Dayton, Ohio 45423
  Attorneys for Plaintiff-Appellant

JAMES H. GORDON, JR., Atty. Reg. No. 0068454 & JEREMY R. KOPP, Atty. Reg. No. 0090577, Two Miranova Place, Suite 300, Columbus, Ohio 43215
  Attorneys for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} Kevin Eikenberry appeals the trial court's grant of summary judgment to the Municipality of New Lebanon ("the city") on his claim alleging that the city's negligent failure to reinstate the lateral sewer service connection from his apartment building to the sewer main caused sewage to backup into the basement. The injury occurred in connection with the city's efforts to rehabilitate the sewer main. The trial court concluded that the city, a political subdivision, was engaged in a governmental function, so it was immune from liability for any damages. We agree and affirm.

## I. Factual and Procedural Background

{¶ 2} New Lebanon had a sewer system problem: rainwater was infiltrating the deteriorating sewer mains, which drew concern from the Environmental Protection Agency. Beginning in 2001, the city embarked on a project to fix the problem. Rather than replace the deteriorated piping with new, the city decided to rehabilitate it using cured-in-place pipe (CIPP), a widely used rehabilitation method that has the distinct advantage of requiring little excavation. Instead, a felt lining is inserted into the existing piping through a manhole or other access point, run along the piping, and attached to its inner walls. The lining is hardened and becomes, basically, a pipe within a pipe.

{¶ 3} Phase 14 of the city's "Sanitary Sewer Rehabilitation Project" began in 2018 and involved the main sewer pipe running in front of an apartment building owned by Eikenberry. Insight Pipe Contracting, L.P. had been awarded the contract to install the CIPP. Insight first inspected the existing sewer pipe by running a video camera through it. This was done to ensure that the pipe was free from obstructions and to look for active lateral service connections, the means by which sewage makes its way from a building to the main sewer pipes. Because the lining would cover up any laterals, severing the

connection, a hole would later need to be cut in the hardened lining to reinstate service. During the prelining inspection of the piping in front of Eikenberry's apartment building, Brian Minehart, who was overseeing the CIPP installation for Insight, saw the building's service lateral. While the project specifications stated that the lateral was active, Minehart noticed a lot of debris in front of it, which suggested to him that it was inactive. Minehart contacted Scott Brock, the city's service department superintendent, and explained the situation to him. After further investigation and discussion, Minehart and Brock concluded that the lateral was inactive, so no hole in the CIPP was cut for Eikenberry's lateral and service was not reinstated.

{¶ 4} But the lateral was active, and because it became blocked by the CIPP, raw sewage backed up into the apartment building. Neither the city's insurer nor Insight's insurer would cover the loss, each blaming the other. The city maintained that Insight was responsible for the damage, and Insight claimed that they city was responsible, and they refused to compensate Eikenberry for the damage. So Eikenberry sued them both for negligence and included claims for trespass and nuisance.[1] The city moved for summary judgment on Eikenberry's claims on immunity grounds. Eikenberry filed a cross-motion for partial summary judgment on the issue of the city's liability. The trial court ultimately denied Eikenberry's motion and granted the city summary judgment, concluding that the city was entitled to sovereign immunity.

{¶ 5} Eikenberry appeals.

---

[1] The city filed cross-claims against Insight for breach of contract, contractual indemnity, common-law indemnity, contribution, and for declaratory judgment. Insight filed cross-claims against the city for indemnification or, alternatively, contribution, and for breach of contract.

## II. Analysis

{¶ 6} In his sole assignment of error, Eikenberry challenges the grant of sovereign immunity. We review issues of sovereign immunity de novo. *See Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 21.

*The Ohio Political Subdivision Tort Liability Act*

{¶ 7} The Ohio Political Subdivision Tort Liability Act, R.C. 2744.01 et seq., applies to Eikenberry's claim. The parties agree that the city is a political subdivision, *see* R.C. 2744.01(F), entitled to general immunity against damages claims for injury or loss to persons or property "allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). But the Act carves out an exception for those damages "caused by the negligent performance of acts by [the city's] employees with respect to *proprietary functions* of the [city]." (Emphasis added.) R.C. 2744.02(B)(2). Accordingly, a city is immune from negligence claims that involve governmental functions but is not immune from negligence claims that involve proprietary functions.

{¶ 8} The relevant function in this case involves a sewer system. A function that involves a sewer system could be either governmental or proprietary. It is a governmental function if it involves "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system." R.C. 2744.01(C)(2)(l). But the function is proprietary if it involves "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d).

{¶ 9} Most of the leading immunity cases that relate to a sewer system involve damages caused because a political subdivision failed to act to remediate a problem that

arose out of a defective design or because a political subdivision failed to redesign or reconstruct the sewer system. *See, e.g., Guenther v. Springfield Twp. Trustees*, 2012-Ohio-203, 970 N.E.2d 1058 (2d Dist.) (claiming that the township's failure to maintain drainage tiles caused basement to flood); *Essman v. City of Portsmouth*, 4th Dist. Scioto No. 09CA3325, 2010-Ohio-4837 (claiming that the city failed to act to accommodate an increase in population and a concomitant increase in the flow in the sewer system, resulting in a sewage backup); *Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952 (claiming that the county failed to keep a storm-sewer system functional). But Eikenberry's claim was different. He alleged that the city's positive action in making improvements to the sewer system caused the damage. *See, e.g., McCormick v. Flaugher*, 5th Dist. Richland No. 18CA53, 2019-Ohio-1211 (claiming that damages were the result of the city's actions taken to resolve defects that the city had identified). We must review the evidence to determine the nature of the function at issue—governmental or proprietary—and whether that evidence was sufficient to support the grant of summary judgment.

*The legal framework*

{¶ 10} "Determining whether an allegation of negligence relates to the maintenance, operation, or upkeep of a sewer system or, instead, the design, construction, or reconstruction of a sewer system is not always a simple inquiry." *Essman* at ¶ 32. Helpful to the determination here is the Ohio Supreme Court's decision in *Coleman v. Portage County Engineer,* in which the Court distinguished between the "failure to upgrade" and "maintenance or upkeep." The Court emphasized that upgrades and related improvements implicate governmental functions. *Coleman* at ¶ 24. And, citing

our decision in *Guenther v. Springfield Township Trustees*, the Court said that a claim sounds in maintenance when "remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration." *Id.* at ¶ 30.

{¶ 11} Based on *Coleman*, then, the question for us is whether Eikenberry was injured in connection with the city's redesign or reconstruction of the sewer system or in connection with "routine maintenance" being performed by the city.

*The evidence*

{¶ 12} Scott Brock, the city's service department superintendent, testified in his deposition that the city was experiencing an infiltration problem with the sewer system caused by deteriorating piping. (Apparently, rainwater in the sewer lines created more costs in processing sewage.) Brian Minehart, who oversaw the CIPP rehabilitation for Insight, explained in his deposition that lining offers a solution to problems of infiltration, intrusion, and deterioration. The purpose of the lining, he said, is to upgrade, enhance, and improve the quality of the sewer main. Although there must be existing pipes in place, because the lining cannot be used alone as a substitute for a pipe, the lining actually enhances the quality of the existing sewer main pipes. The addition of the lining essentially creates a new "pipe-within-a-pipe" and ultimately upgrades the existing pipes by extending their lifespan. The lining changes the existing state of repair of the pipes, marking a substantial improvement to the pipes' condition. The alternative to lining sewer pipes is removal and replacement. Minehart testified that, while removal and replacement may be a longer-term solution, the lining produced a similar result to replacement and was less burdensome in terms of cost and disruption for the city's residents, because it

avoided the need to excavate streets and sidewalks.

{¶ 13} The evidence showed that Phase 14 of the Sanitary Sewer Rehabilitation Project was a major capital improvements project with considerable expense. The project involved lining 2,822 feet of 15-foot sanitary sewer piping and the rehabilitation of 10 manholes. New Lebanon had retained an engineer to create detailed specifications for the project and then solicited bids to perform the work from independent contractors. The city ultimately accepted Insight's bid of $163,360. The city's mayor and city council were intimately involved in both the project's specifications and the acceptance of Insight's bid. We note too that the project was funded with a state grant titled "Ohio Public Works Commission Project Grant Agreement State Capital Improvement Program"; according to the terms of the grant, the funds were to be designated for a "Capital Improvement Project."

{¶ 14} Finally, the evidence showed that the installation of the CIPP required special materials and specialized equipment. The lining was transported in a refrigerated truck from Insight's facility in Pennsylvania to the job site in New Lebanon. The installation also required specialized equipment (e.g., steam hoses, shoes, banding, band clamps, bypass pumps, cones, domes, TV van with cutting capabilities, a steamer unit) all of which were supplied by Insight.

*The function at issue was governmental*

{¶ 15} The precise cause of Eikenberry's injury was the allegedly negligent failure to reinstate service (by cutting a hole in the CIPP) for the lateral sewer line that connected his apartment building to the main sewer pipe. So the issue was not the CIPP per se. After all, Eikenberry would have suffered the same injury had the city instead excavated

the existing sewer pipe to which his lateral connected, replaced it with new pipe, and failed to reconnect his lateral. And if the city had instead done that, we think that there would be little question that the project was one of reconstruction.

{¶ 16} Based on the nature and extent of the work involved, the specialized equipment necessary, and the involvement of the city's highest governing authorities, we conclude the project here was much more than routine maintenance. What occurred was not "routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration." Rather, the installation of the CIPP "updated" and "upgraded" the quality of New Lebanon's sewer system. The city engaged in more than simple damage or deterioration repair. The rehabilitation of the sewer pipes was, in essence, an upgrade to the sewer system that changed the condition of the existing pipe. This does not align with the definition of maintenance or upkeep given by the Ohio Supreme Court in *Coleman*. The rehabilitation of the sewer pipes was far from routine but involved considerable discretion by the city. Moreover, the project was funded through a state grant for capital improvement projects, which also suggested that the work was better characterized as an improvement or upgrade to the sewer pipes. Based on the decisions and the reasoning articulated in *Coleman* and *Guenther*, we conclude that the rehabilitation of the sewer pipes using CIPP was more akin to reconstruction of a sewer system than routine maintenance and upkeep.

*The affidavit of Mark Schneider, P.E.*

{¶ 17} Finally, Eikenberry contends that the trial court erred by striking the affidavit of Mark Schneider, a licensed professional engineer with experience in public civil engineering projects. The city moved to strike the affidavit because it contained several

legal conclusions. The trial court granted the city's motion without explanation.

{¶ 18} Evidence submitted in connection with a summary-judgment motion must comply with Civ.R. 56(E), which pertinently provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence[.]" "Statements contained in affidavits must be based on personal knowledge and cannot be legal conclusions." *Brannon v. Rinzler,* 77 Ohio App.3d 749, 756, 603 N.E.2d 1049 (2d Dist.1991).

{¶ 19} After making statements to establish his expertise in this matter, Schneider's affidavit stated that he was asked to provide his "professional opinion concerning whether the Project represents the 'construction or reconstruction of a sewer system,' or, alternatively, represents the 'maintenance, operation, and upkeep of a sewer system.' " (Schneider Aff. ¶ 9.)   He gave his opinion near the end of the affidavit: "It is my professional opinion that the Project involves the maintenance and upkeep of a sewer system." (*Id.* at ¶ 17.) There are a few other statements to the effect that the project involved maintenance, but most of the remaining statements in the affidavit stated facts supporting Schneider's opinion.

{¶ 20} The crucial statements in Schneider's affidavit -- that the work was maintenance – did not satisfy Civ.R. 56(E)'s personal-knowledge requirement but represented legal conclusions. Consequently, those conclusions could not be considered in the summary judgment analysis. What was presented in the affidavit might be called a "notarized legal argument." The facts stated in the affidavit were not in dispute, and the question that remained was one of law. Whether Schneider, in his professional opinion, thought the work was maintenance did not create a factual question.

{¶ 21} Still, we agree that the trial court should not have struck the entire affidavit. It included several statements that were based on personal knowledge, so the court should have struck only the objectionable statements—the legal conclusions that the work was maintenance. In fact, this is what the court actually did in its analysis, judging from its written decision. The court cited Schneider's affidavit and quoted factual statements from it, so it appears that the court considered the admissible statements and ignored the objectionable ones. In our de novo review, we do not see any prejudice from the court's handling of the affidavit.

### III. Conclusion

{¶ 22} "In order to prevail on a motion for summary judgment, there must be no genuine issue of material fact, the moving party must be entitled to judgment as a matter of law, and it must appear from the evidence, when viewing the evidence in favor of the nonmoving party, that reasonable minds can come only to a conclusion adverse to the nonmoving party." *A.J.R. v. Lute*, Ohio Slip Opinion No. 2020-Ohio-5168, __ N.E.3d __, ¶ 15, citing *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 65-66, 609 N.E.2d 144 (1993).

{¶ 23} Here, reasonable minds reviewing the evidence in this record—in a light most favorable to Eikenberry—could conclude only that Eikenberry's harm was caused by city action that was part of a planned redesign or reconstruction of the sewer system. The rehabilitation of the sewer pipes using CIPP was not part of the city's regular, routine maintenance or upkeep of its sewer system. Eikenberry's harm was not caused by the city's maintenance or operation of the sewer system. It did not arise from the city's failure to repair damage to, inspect, remove obstructions, or remedy general deterioration of the

sewer system. Rather, his harm was caused in connection with the city's efforts to reconstruct its sewer system—a governmental function. Therefore, New Lebanon was immune from liability with respect to Eikenberry's claim.

{¶ 24} The assignment of error is overruled. The trial court properly granted summary judgment to New Lebanon on Eikenberry's claims. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Lowell T. Woods, Jr.
Jennifer D. Brumby
James H. Gordon, Jr.
Jeremy R. Kopp
Brian McHenry
Mark Craig
Hon. Gerald Parker