[Cite as *Cincinnati v. Rennick*, 2022-Ohio-1110.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | APPEAL NO. C-210383<br>TRIAL NO. A-1805774 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| STEVEN M. RENNICK, SR., | : | |
| and | : | |
| PHYLLIS RENNICK, | : | |
| Defendants-Appellees. | : | |
| STATE OF OHIO, EX REL.,<br>STEVE RENNICK, SR. a.k.a.<br>STEVE RENNICK, | : | APPEAL NO. C-210383<br>TRIAL NO. A-1806226 |
| | : | |
| Relator, | : | *O P I N I O N.* |
| | : | |
| and | : | |
| STEVE RENNICK, SR., a.k.a.<br>STEVE RENNICK, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | |
| CITY OF CINCINNATI, et al., | : | |
| Respondents-Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: April 1, 2022

*Andrew W. Garth,* City Solicitor, and *Kevin M. Tidd*, Senior Assistant City Solicitor, for Plaintiff-Appellant,

*Lindhorst & Dreidame Co., LPA, Matthew C. Curran* and *Elizabeth M. Johnson,* for Defendants-Appellees.

**BERGERON, Presiding Judge.**

{¶1} The Ohio Political Subdivision Tort Liability Act grants statutory immunity against damages incurred in the performance of governmental and proprietary functions, subject to certain exceptions. The exception at issue before us involves damages caused by the negligence of the political subdivision's employees with respect to proprietary functions. Defendants-appellees Steve and Phyllis Rennick (the "Rennicks") contend that plaintiff-appellant the city of Cincinnati ("city") failed to adequately maintain a sewer system, a proprietary function which they believe negates immunity. For its part, the city frames the issue as arising out of the construction and design of the sewage system, governmental tasks shielded by sovereign immunity. Because the record here (essentially limited to the complaint) is not developed enough for us to determine whether the challenged functions fall on the governmental or proprietary side of the line, we affirm the trial court's denial of the city's motion for judgment on the pleadings because the alleged facts plausibly suggest a proprietary function.

I.

{¶2} The Rennicks operate a commercial garage and office on their Hamilton County property, a plot of land containing multiple consolidated parcels. Despite its current zoning designation, the original land purchased by the Rennicks was located in a commercial community-mixed zoning district. The Rennicks continue operating their business on the original property footprint as a legal, nonconforming use of the property, but the subsequent adjoining properties acquired and consolidated by them are situated in single family residential zoning districts. The city alleged that the Rennicks' business operations stretched onto the single-family parcels, in

contravention of the residential zoning code, and it filed for injunctive relief demanding that they cease the operation of nonpermitted uses on the expanded part of their property.

{¶3} Between 2014 and 2017, a seven-acre tract of land southwest of the Rennicks' original property developed into what is now the 21-home Witherby Meadows subdivision. The parcel of land adjoining the Rennicks' original property contained a creek and other land unsuitable for building homes, so the Witherby Meadows developer conveyed it to the Rennicks. The city dedicated public storm sewers to collect storm water runoff from the new subdivision, and those storm sewers empty into the creek on what is now the southernmost part of the Rennicks' property. From there, water flows first into an inlet pipe running along the road adjacent to the Rennicks' property and then into an unknown terminus underneath the road. After the city filed for injunctive relief, the Rennicks separately filed a petition for a writ of mandamus and a complaint seeking damages for the city's negligent maintenance of the storm water drainage system on their property. The Rennicks claimed that the city created a nuisance by negligently maintaining the inlet pipe leading to the public storm sewer system, thereby increasing the amount of water, mold, and mice invading the southern part of their property.

{¶4} Additionally, the Rennicks maintain that—to alleviate this incursion— they purchased pipes at their own cost to contain the drainage system. After the city allegedly blessed this plan, it later rescinded permission, leaving the Rennicks on the hook for the piping costs. Seeing things differently, the city parried with a counterclaim for breach of easement, after which the trial court consolidated the parties' complaints. The Rennicks voluntarily dismissed some claims in their

4

amended complaint, and the city moved for judgment on the pleadings as to the remaining claims of nuisance, interference of surface water, and promissory estoppel. Without analysis, the trial court denied the motion.

{¶5} The city's sole assignment of error challenges the denial of its motion for judgment on the pleadings on immunity grounds, arguing that R.C. Chapter 2744 provides immunity for what it depicts as a drainage system design capacity issue. "Dismissal is appropriate under Civ.R. 12(C) when a court construes as true the material allegations in the complaint, along with all reasonable inferences to be drawn therefrom, and finds, beyond doubt, that the plaintiff can prove no set of facts that would entitle him to relief." *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng.*, Inc., 157 Ohio St.3d 164, 2019-Ohio-2851, 133 N.E.3d 482, ¶ 8. A trial court may grant a motion for judgment on the pleadings on the basis of immunity only where the pleadings, construed in a light most favorable to the plaintiff, conclusively establish the affirmative defense. *Steele v. Cincinnati*, 1st Dist. Hamilton No. C-180593, 2019-Ohio-4853, ¶ 15. "Appellate review of a judgment on the pleadings involves only questions of law and is therefore de novo." *New Riegel* at ¶ 8.

{¶6} Because it does not constitute a final order, the denial of the city's motion for judgment on the pleadings regarding the breach of easement claim is not before us; we have appellate jurisdiction only as it pertains to the denial of immunity for the Rennicks' nuisance, interference of surface water, and promissory estoppel claims. *See* R.C. 2744.02(C) ("An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."). We

5

accordingly confine our review to the propriety of immunity on the extant pleadings, and express no opinion on other aspects of the parties' disputes.

II.

{¶7} The Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, sets forth a three-tiered analysis to determine whether a political subdivision, such as the city, enjoys immunity from civil liability. *Georgantonis v. City of Reading*, 2020-Ohio-3961, 156 N.E.3d 1037, ¶ 10 (1st Dist.). We start from the premise that "a political subdivision is generally immune from liability incurred in performing either a governmental or proprietary function." *Stykes v. Colerain Twp.*, 2019-Ohio-3937, 145 N.E.3d 1123, ¶ 6 (1st Dist.), citing *Howard v. Miami Twp. Fire Div.*, 119 Ohio St.3d 1, 2008-Ohio-2792, 891 N.E.2d 3, ¶ 18. We then consider if one of the five exceptions to the general rule of immunity listed in R.C. 2744.02(B) exposes the political subdivision to tort liability. *Id.* If an exception does apply, we then turn to whether the political subdivision can establish immunity through another statutory defense (a point no party argues on the present record). *Id.*

{¶8} We begin with the Rennicks' claims for nuisance and interference of surface water. The question before us at this stage is whether the alleged harm suffered by the Rennicks results from the city performing a governmental or a proprietary function. Governmental functions are those activities imposed upon the state as an obligation of sovereignty, performed for the common good of all citizens in the state, or achieved to promote the public peace, health, safety, and welfare. *See* R.C. 2744.01(C)(1). Relevant to this case, "R.C. 2744.01(C)(2)(l) identifies as a governmental function 'the provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including but not limited to,

6

a sewer system,' making these responsibilities immune from political-subdivision liability." *Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, ¶ 12. Design flaws in a sewer system implicate governmental functions and are accorded immunity. *Bernard v. City of Cincinnati*, 2019-Ohio-1517, 135 N.E.3d 485, ¶ 11 (1st Dist.) ("[A] design flaw * * * squarely falls in the 'governmental' bucket. Issues of design of a sewer system are accorded governmental immunity."). The city urges us to adopt this governmental function categorization because, in its view, "remedying the problem would require [the city] to, in essence, redesign or reconstruct the sewer system." *See Coleman* at ¶ 30.

{¶9} By contrast, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2). The Rennicks encourage us to view the activity as one of the exceptions to immunity found in R.C. 2744.01(G)(2)(d), which "identifies 'the maintenance, destruction, operation, and upkeep of a sewer system' as a proprietary function for which civil liability may attach." *Coleman* at ¶ 12. Proprietary functions involve "activities that are customarily engaged in by nongovernmental persons." R.C. 2744.01(G)(1)(b). Because it is possible for proprietary functions to include governmental activities, we must evaluate " 'what it is that the political subdivision is actually doing when performing the function.' " *Kenko Corp. v. City of Cincinnati*, 183 Ohio App.3d 583, 2009-Ohio-4189, 917 N.E.2d 888, ¶ 27 (1st Dist.), quoting *Allied Erecting Dismantling Co. v. City of Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶ 41 (7th Dist.). "[T]he specific act or omission at issue must be considered, not just the general nature of the function." *Steele*, 1st Dist. Hamilton No.

7

C-180593, 2019-Ohio-4853, at ¶ 20. If the Rennicks can establish that their property loss traces to the city's negligent maintenance of the sewer system, then the city's performance of that proprietary function would defeat its general grant of immunity (unless an exception applied under R.C. 2744.03). The problem is, on this record and construing the pleadings in the Rennicks' favor, we just can't say with any certainty that the harm alleged is governmental or proprietary, but the allegations in the complaint sufficiently point enough in the latter direction to avoid dismissal at this stage.

{¶10} The Rennicks maintain that their claims of nuisance and surface water interference arise from the city's failure to maintain the area around the inlet pipe and the inlet pipe itself, along with the drainage system. As described by the Rennicks, prior to the installation of the Witherby Meadows storm sewers, they experienced no problems with the volume of water flowing to the creek and inlet pipe. Afterwards, the volume increased significantly, eroding the area around the creek. The city zeros in on those specific lines in the Rennicks' complaint to conclude that the stress of linking the Witherby Meadows drainage infrastructure constitutes a design capacity issue that can only be remedied by a reconstruction or new construction of the drainage system. But that conclusion disregards other aspects of the complaint, including a section titled "Failure to Maintain Inlet Pipe," and the city fails to reconcile its arguments with the allegations that point in the other direction. After all, the Rennicks also allege that the city "failed to adequately maintain and operate the inlet pipe," and that it "created a nuisance by not properly maintaining property surrounding the creek and the inlet pipe."

8

{¶11} We recognize that the Rennicks' complaint uses the words install, maintain, and operate somewhat interchangeably, rendering it difficult to discern whether the remedy required to solve the problem falls under a governmental or proprietary function. *See Coleman,* 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952, at ¶ 30. As we read the complaint, it seems possible that some aspects of the Rennicks' claims will implicate proprietary functions and others governmental, or maybe they all fall in one bucket or the other. The parties can revisit such matters on summary judgment if a more complete record answers these questions. *See Bernard*, 2019-Ohio-1517, 135 N.E.3d 485, at ¶ 32 ("A comprehensive and integrated review of the record demonstrates that the issues emphasized by the [plaintiffs] fall short of raising genuine issues of material fact."). But, on this record, the face of the complaint does not reveal how we should characterize the Rennicks' claims, meaning the city failed to conclusively establish its immunity defense. We accordingly find it proper for the trial court to have denied the city's motion for judgment on the pleadings.

{¶12} For similar reasons, the trial court correctly denied the city's motion as to the Rennicks' promissory estoppel claim. " '[T]he doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function.' " *United States Bank Natl. Assn. v. City of Cincinnati*, 2019-Ohio-1866, 136 N.E.3d 794, ¶ 9 (1st Dist.), quoting *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 16. Thus, "[t]he city can be estopped only with respect to acts done in the exercise of a proprietary function." *Id*. at ¶ 19. The Rennicks insist that this claim presents a proprietary function (the city's failure to maintain the inlet pipe) and their complaint explains that they sought permission from the city to install pipes in the

ground on the overflow area to contain the drainage ditch, place fill over the pipes, and create usable land. The city counters that the alleged damages arise from the governmental function of approving plans or permits for the Rennicks' proposed construction of a storm water structure. *See* R.C. 2744.01(C)(2)(p).

{¶13} But here again, the complaint does not conclusively answer this question. We see no indication on this record that the Rennicks ever applied for or were denied a permit, or that they endeavored to construct the type of building or structure contemplated by R.C. 2744.01(C)(2)(p). At this stage, the Rennicks need only plead a plausible set of facts entitling them to relief, and they have done so. The record here is not developed enough, on any of the Rennicks' claims, to establish that the functions being performed are definitively governmental or otherwise entitled to immunity.

\*       \*       \*

{¶14} In light of the foregoing analysis, we overrule the city's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.