# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

### CHARLENE RICE ET AL.,

Plaintiffs-Appellees/Cross-Appellants,

v.

### COLUMBIANA COUNTY BOARD OF COMMISSIONERS ET AL.,

Defendants-Appellants/Cross-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CO 0031**

---

Civil Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2019 CV 79

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. David S. Barbee*, Roth, Blair, Roberts, Strasfeld & Lodge, 11 S. Main Street, Columbiana, Ohio 44408 for Plaintiffs-Appellees/Cross-Appellants, and

*Atty. Susan Petro and Atty. Josh L. Schoenberger*, Williams & Schoenberger Co., L.L.C., 338 S. High Street, 2nd Floor, Columbus, Ohio 43215 for Defendants-Appellants/Cross-Appellees.

Dated:
June 17, 2022

**Donofrio, P. J.**

**{¶1}** Defendants-appellants/cross-appellees, the Columbiana County Board of Commissioners and the Columbiana County Engineer (collectively referred to as the County), appeal from a Columbiana County Common Pleas Court judgment denying their motion for summary judgment and finding they are not immune from liability on the complaint for negligent maintenance/repair of a sewer system filed by plaintiffs-appellees/cross-appellants, Charlene Rice and Arlene Obertance (plaintiffs). Cross-appellants appeal from the court's judgment granting summary judgment in favor of the County on their estoppel claim.

**{¶2}** Obertance owns the home located at 49295 South Meadowbrook Circle in East Liverpool (the home). Rice, Obertance's mother, lives at the home. The home is connected by a lateral line to the sanitary sewer line on South Meadowbrook Circle.

**{¶3}** Columbiana County is responsible for the maintenance and operation of the sewer line. County employees regularly maintain the sewer line to keep it free from clogs and obstructions, including using a "vac-truck" and "jetting the line" with high-pressure water.

**{¶4}** A sewage backup occurred at another house upstream from plaintiffs on South Meadowbrook Circle, the Cranston residence. That backup was caused by a collapsed fitting on the lateral line running from that house. In addressing that backup, the commissioners and/or the county sanitary engineer arranged for the installation of a manhole near the Cranston residence.

**{¶5}** On March 6, 2017, Allison Contracting, Inc. installed the new manhole. The manhole provided access to inspect, maintain, and clean the sewer line. After the manhole was installed, the line was jetted. On March 7, 2017, Rice found several feet of water in the basement of the home. The County was contacted. Deputy County Engineer/Deputy Sanitary Engineer, Troy Graft, went to the home to observe the damage. Graft then contacted Columbiana County Engineer/Sanitary Engineer, Bert Dawson, who

also went to the home to observe the damage. According to Obertance, one or both of these men assured her that the County would pay for the damages to the home.

**{¶6}** Subsequently, Obertance contacted Brad's Carpet & Upholstery Cleaning, Inc. (Brad's) to take care of the clean-up and remediation. A discrepancy later arose as to whether the County would in fact pay for the clean-up and remediation of the basement.

**{¶7}** Plaintiffs filed a complaint against the County on February 8, 2019, asserting claims for negligence and negligent misrepresentation/promissory estoppel. The complaint also asserted claims against Brad's, XYZ Corporation, and John Does. Those claims are not before us in this appeal. The County filed an answer asserting numerous defenses including statutory immunity.

**{¶8}** The County next filed a motion for summary judgment asserting no genuine issues of material fact and political subdivision immunity. Plaintiffs filed a response in opposition.

**{¶9}** First, the trial court addressed the County's motion as to the negligence claim and whether the County was entitled to immunity. The trial court determined that this case involved a proprietary function, that being the upkeep and maintenance of the sewer line on South Meadowbrook Circle. Because it determined the County was involved in a proprietary function, as opposed to a governmental function, the court found that the County's political subdivision immunity was removed. The court then went on to analyze whether the County's immunity could be reinstated, but concluded it could not. Thus, the court denied the County's summary judgment motion as it pertained to plaintiffs' negligence claim.

**{¶10}** Next, the court addressed the negligent misrepresentation/promissory estoppel claim. It noted that Obertance stated in her deposition that she would have hired Brad's to perform the clean-up and remediation work regardless of any purported promises from the County to pay for these services. The court found this admission eliminated any genuine issue of material fact and negated any reliance on the promise that plaintiffs attributed to the County. Thus, the court granted the County's motion for summary judgment as it pertained to the negligent misrepresentation/promissory estoppel claim.

Case No. 20 CO 0031

**{¶11}** The County filed a timely notice of appeal on December 23, 2020. Plaintiffs filed a timely notice of cross-appeal on December 31, 2020.

**{¶12}** Generally the denial of a summary judgment motion is not a final, appealable order. But in this case, it is. Here, the County's motion for summary judgment was based on the premise of governmental immunity. The Ohio Supreme Court has held: "When a trial court denies a motion in which a political subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and is therefore a final, appealable order pursuant to R.C. 2744.02(C)." *Hubbell v. City of Xenia*, 115 Ohio St.3d 77, 873 N.E.2d 878, 2007-Ohio-4839, at the syllabus.

**{¶13}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶14}** The County raises three assignments of error. Its first and second assignments of error are closely related. Therefore, we will address them together. The County's first assignment of error states:

THE TRIAL COURT ERRED IN CONCLUDING THAT THE SEWER WATER BACK UP INTO THE BASEMENT OF THE PROPERTY WAS THE RESULT OF OR RELATED TO THE PERFORMANCE OF A PROPRIETARY FUNCTION.

**{¶15}** The County's second assignment of error states:

BECAUSE THE SEWER WATER BACK UP INTO THE BASEMENT OF THE PROPERTY WAS THE RESULT OF OR RELATED TO THE PERFORMANCE OF A GOVERNMENTAL FUNCTION, THE TRIAL COURT ERRED IN DENYING THE COLUMBIANA COUNTY DEFENDANTS IMMUNITY UNDER R.C. 2744.02.

{¶16}   The County argues the trial court erred in finding that the R.C. 2744.02(B)(2) exception applied to except it from immunity.  It asserts that the installation of a new manhole and the jetting of the water into the sewer line up-and-down stream from the property was the cause of the flooding.  It further asserts that the installation of the new manhole was an "upgrade" to the sewer system and thus falls under the definition of a "governmental function," for which immunity would apply, as opposed to a "proprietary function," for which immunity does not apply.  The County goes on to argue that the trial court's conjecture about other possible causes of the flooding including tree roots, the vitreous clay composition of the sewer line, and the grade and slope of the land was not proper in its summary judgment determination.

{¶17}   Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process.  *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000).  Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages.  *Id.* at 556-557.  Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply.  *Id.* at 557.  Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, it must consider R.C. 2744.03, which provides defenses and immunities to liability.  *Id.*

{¶18}   Thus, we begin our analysis under the first tier with the premise that the County is not liable in damages here because it is a political subdivision.  This is not disputed.

{¶19}   Under the second tier, the trial court found that the County is not entitled to immunity based on the R.C. 2744.02(B)(2) exception.  This exception to immunity states, "except as otherwise provided * * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their

employees with respect to *proprietary* functions of the political subdivisions." (Emphasis added); R.C. 2744.02(B)(2).

{¶20} Pursuant to R.C. 2744.01(G)(2)(d), a "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system[.]" This is in contrast to a "governmental function," which instead includes "[t]he provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system[.]" R.C. 2744.01(C)(2)(l). Thus, depending on what is being done to or with the sewer system determines whether that action constitutes a governmental or proprietary function.

{¶21} The trial court discussed the events leading up to flooding at plaintiffs' house. It noted that the County oversaw and performed sewer-line maintenance on South Meadowbrook on a regular basis and on an as-needed basis. It found that this case involved a proprietary, as opposed to a governmental function. It noted that this matter did not involve the planning, design, or reconstruction of a sewer system. The court then discussed possible causes for the flooding in the plaintiffs' basement.

{¶22} Jose Ramos is a County maintenance worker who takes care of mechanical issues and sewer lines in the County. Ramos testified that as a general practice, before the incident in this case, he inspected and maintained the sewer line on South Meadowbrook approximately every six months. (Ramos Depo. 12-13). This involved looking into the site manholes and "jetting the line" with a "vac-truck" to clean the lines out. (Ramos Depo. 12-13, 15-16).

{¶23} Ramos stated that a few days before the flooding at plaintiffs' house, there was a back-up in the basement of the Cranstons' house, up the hill from plaintiffs. (Ramos Depo. 22). Because there was no manhole at the Cranstons' house, he could not inspect the line there. (Ramos Depo. 22-23). Consequently, Allison Contracting was contacted to install a manhole in that area. (Ramos Depo. 25).

{¶24} Donald Harrison was the utility superintendent for the County at the relevant time. He confirmed what Ramos said: that the County's general maintenance for the sewer line on South Meadowbrook was to inspect the manhole and jet the line. (Harrison Depo. 11-12).

**{¶25}** Troy Graft is the deputy county engineer and deputy sanitary engineer. He stated that the activities of inspecting the manhole and jetting the line were "normal maintenance." (Graft Depo. 10-11). Graft stated that he authorized the installation of the new manhole in order to see what had caused the flooding at the Cranston house. (Graft Depo. 12-13). When asked about the cause of the flooding at plaintiffs' house, Graft stated that he still did not know what caused the flooding. (Graft Depo. 17).

**{¶26}** Bert Dawson is the county engineer and the sanitary engineer. Dawson stated that the new manhole by the Cranston house was put in as part of the resolution to the flooding in the Cranstons' basement. (Dawson Depo. 18). He also stated that it would be easier in the future to have a manhole there to access the sewer line. (Dawson Depo. 18).

**{¶27}** Noah Allison is the owner of Allison Contracting, a municipal and commercial excavating and utility contractor. Allison stated that he was contacted by Harrison and Graft because they "were having a maintenance issue on the 8-inch sanitary main." (Allison Depo. 9). He stated that the County could not locate a "cleanout" so "they had us come out that Monday morning and install a new sanitary manhole on the upstream side so they could do some general maintenance jetting of the sewer line." (Allison Depo. 9). Subsequently, Allison's company located the sanitary main, excavated down, found the "cleanout," cut the sewer line, and installed a new sanitary manhole. (Allison Depo. 10). After the work was done, Allison stated that the County employees came out "to do just a standard maintenance" and jetted the line to flush everything and make sure it was flowing properly. (Allison Depo. 10).

**{¶28}** The County relies in part on this court's decision in *Ivory v. Austintown Twp.*, 7th Dist. Mahoning No. 10 MA 106, 2011-Ohio-3171. It asserts *Ivory* stands for the proposition that modifications to an existing sewer system are governmental functions of design, construction, and reconstruction as opposed to proprietary functions of maintenance, operation, or upkeep.

**{¶29}** In that case, after a heavy rain, water rushed onto Ivory's driveway and into his garage and basement. According to Ivory, an open drainage ditch had previously abutted his property. Two weeks prior to the storm, the City of Austintown had replaced the open drainage ditch with a pipe and catch basin, which Ivory claimed was unable to

collect all of the storm water and caused his home to flood. Ivory filed a complaint against Austintown alleging that it negligently maintained its sewers when it covered the drainage ditch and installed the pipe and catch basin. Austintown moved for summary judgment, asserting immunity. The trial court granted Austintown's motion finding none of the exceptions to immunity in R.C. 2744.02(B) applied. Ivory appealed to this court.

{¶30} On appeal, this court examined whether Austintown was engaged in a proprietary or governmental function. *Id.* at ¶ 13. We noted that the determination of whether Austintown's actions were proprietary or governmental was difficult because the record did not contain any information concerning the construction, design, or maintenance of the sewer. *Id.* at ¶ 16. Specifically, neither party presented any testimony indicating why the pipe and catch basin was installed or whether it operated correctly during the storm. *Id.* We went on to analyze the issue:

> The legal question is whether the installation of the pipe and catch basin constituted maintenance of a sewer, a proprietary function, or the provision, design or construction of a sewer, a governmental function. Integral to Ivory's claim is the assertion that the old drainage ditch was a sufficient sewer system while the new pipe and catch drain is not. This is a tacit admission that the flooding problem can only be remedied by the removal or redesign of the pipe and catch basin. Viewing the evidence in a light most favorable to Ivory, when Austintown covered the drainage ditch and installed the pipe and catch basin, it had provided/redesigned/constructed a new sewer, not maintained it. Because sewer design and construction is a governmental, not proprietary, function, R.C. 2744.02(B)(2) does not apply and Austintown's immunity remains intact.

*Id.* at ¶ 19.

{¶31} This case is distinguishable from *Ivory*, however. In *Ivory*, Austintown redesigned or reconstructed part of the sewer system when it removed the open drainage ditch and decided to replace it with a pipe and catch basin. The new system, apparently, was unable to handle the storm water. In this case, however, the County did not redesign or reconstruct any part of the sewer system. Instead, it simply installed an additional

manhole so that County employees could have another vantage point from which to view the sewer line on South Meadowbrook and enable employees to see the line near the Cranstons' house. The County did not modify the sewer line in any way.

**{¶32}** The County also relies in part on *Coleman v. Portage Cty. Engineer*, 133 Ohio St.3d 28, 2012-Ohio-3881, 975 N.E.2d 952. In that case, the Colemans sued the Portage County Engineer after repeated flooding of their property over the course of many years, which they alleged was caused by a piping system that was unable to accommodate all the drainage water. The trial court dismissed the Colemans complaint finding the county engineer was immune from litigation based upon claims for negligent planning, design, and construction of the water pipelines. On appeal to the Ohio Supreme Court, the Court held: "For purposes of R.C. Chapter 2744, a claim based on a failure to upgrade is a claim based on a failure of design and construction, for which political subdivisions enjoy immunity, and not a claim based on a failure to properly maintain, for which political-subdivision liability may be extant." *Id.* at ¶ 31.

**{¶33}** The case at bar, however, does not involve a failure to upgrade claim. Nor does it involve repeated flooding spanning many years allegedly caused by a failure to construct a drainage plan or water drainage system to adequately drain the water as was the case in *Coleman*.

**{¶34}** In the present case, installing the manhole was not an "upgrade" of the current sewer system. Allison stated that the County hired his company to install the manhole in response to "a maintenance issue" so that it could "do some general maintenance jetting of the sewer line." (Allison dep. 9). After Allison installed the manhole, the County jetted the sanitary line, which involved pumping a large amount of water into it. Moreover, the new manhole was clearly installed so that the County could have a view of the sewer line, which was to help locate the cause of the Cranstons' flooding. County employees then jetted the sewer line, which everyone agreed was a matter of general maintenance.

**{¶35}** It is not clear from the evidence what caused the flooding in plaintiffs' basement. The trial court and the parties spend some time discussing possible causes including the installation of the manhole, the maintenance of the sewer line, vitreous clay pipes, and tree roots. But at this point in the proceedings, we are not faced with

determining the cause. Instead, we are only to consider whether the County's actions in installing the new manhole and the corresponding work of jetting and inspecting the sewer line constituted a proprietary or governmental function. Based on the evidence, the County was involved in maintenance, operation, and upkeep of a sewer system as opposed to the planning or design, construction, or reconstruction of a sewer system. Therefore, the trial court was correct in determining that the County is not entitled to immunity pursuant to R.C. 2744.02(B)(2).

**{¶36}** Genuine issues of material fact exist as to whether the County's employees performed negligent acts with respect to a proprietary function.

**{¶37}** Accordingly, the County's first and second assignments of error are without merit and are overruled.

**{¶38}** The County's third assignment of error states:

> EVEN IF THE SEWER WATER BACK UP INTO THE BASEMENT OF THE PROPERTY WAS THE RESULT OF OR RELATED TO A PROPRIETARY FUNCTION, R.C. 2744.03(A)(3) AND (5) RESTORE THE COLUMBIANA COUNTY DEFENDANTS' IMMUNITY FROM TORT LIABILITY.

**{¶39}** The County asserts that even if an exception to immunity applies, the R.C. 2744.03(A)(3) and (5) defenses to liability operate to reinstate immunity.

**{¶40}** R.C. 2744.03(A)(3) and (5) provide:

> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
>
> * * *
>
> (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment

Case No. 20 CO 0031

or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶41} The County points out that plaintiffs claim the flooding was a result of water jetted into the sewer line "concomitant with" the installation of the new manhole by the County's contractor, Allison Contracting. It further points out that plaintiffs acknowledged that the new manhole was installed "to better monitor the sewage flow of the South Meadowbrook Circle sanitary line." Thus, the County asserts it is undisputed that the cause of the flood was a result of a sewer policy-making or planning decision by the County. Because the decision involved the exercise of discretion on the part of one or more employees, the County argues it is immune from liability under R.C. 2744.03(A)(3).

{¶42} Similarly, the County asserts it is immune from liability under R.C. 2744.03(A)(5) because the installation of the new manhole involved the exercise of judgment or discretion in determining how to use equipment, supplies, materials, and resources. Specifically, it points to the decision to hire Allison to perform the work instead of having county employees perform it.

{¶43} But the County failed to raise these arguments on summary judgment. In its motion for summary judgment, as pertaining to immunity, the County rested its entire argument on the second tier of the analysis arguing that no exceptions to immunity existed. It then concluded: "Because the County retains its immunity at the second tier, the R.C. Chapter 2744 analysis proceeds no further." (Motion of Defendants Columbiana County Board of Commissioners for Summary Judgment).

{¶44} A party cannot raise a new issue in support of summary judgment for the first time on appeal. *Whitson v. One Stop Rental Tool & Party*, 12th Dist. Preble No. CA2016-03-004, 2017-Ohio-418, ¶ 17; *Jackson v. Ervin*, 8th Dist. Cuyahoga No. 68842, 1995 WL 680925, *4 (Nov. 16, 1995).

{¶45} The trial court did, sua sponte, raise the issue of the third tier of immunity and found that it did not apply to reinstate immunity. But the County never raised an argument in its motion for summary judgment surrounding the third tier. Likewise, the

Case No. 20 CO 0031

plaintiffs made no mention of the third tier in their response to the County's summary judgment motion. Thus, this issue is not properly before this court on review.

**{¶46}** Accordingly, the County's third assignment of error is without merit and is overruled.

**{¶47}** The plaintiffs raise a single assignment of error in their cross appeal:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE COUNTY WITH RESPECT TO APPELLEES' ESTOPPEL CLAIM.

**{¶48}** Plaintiffs argue the trial court should not have granted summary judgment in favor of the County on their estoppel claim. They claim a genuine issue of material fact exists as to whether the County promised to pay for the flood damages. They also assert they relied on the promises made by County engineer and the County water and sewer superintendent that the County would pay for the damage to the basement caused by the flood. They acknowledge that Obertance stated that she would have hired Brad's to clean and repair the basement. But they point out that Obertance called Brad's only after checking with Graft to make sure Brad's was acceptable. (Obertance dep. 56). And she did not sign the work authorization until Harrison confirmed that the County would pay for the work. (Obertance dep. 145-146). Thus, they argue the County's promise was an inducement for them to hire Brad's. Whether the County's promises were sufficient inducement is a question of fact, plaintiffs assert.

**{¶49}** As set out by the Ohio Supreme Court, the elements required for negligent misrepresentation are:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." (Emphasis added.)

Case No. 20 CO 0031

*Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835 (1989) quoting 3 Restatement of the Law 2d, Torts (1965), Section 552(1).

{¶50} The elements necessary for a promissory estoppel claim are (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) injury by the reliance by the party claiming estoppel. *Landpor Contrs., Inc. v. C & D Disposal Tech. L.L.C.*, 7th Dist. Jefferson No. 11-JE-28, 2013-Ohio-1436, ¶ 34.

{¶51} In this case, the trial court found that Obertance's statement that she would have hired Brad's to perform clean-up and remediation work irrespective of any purported promise by Dawson eliminated any genuine issue of material fact and negated any reliance on the alleged promise.

{¶52} In support of their claim, plaintiffs point to Obertance's deposition testimony regarding the alleged promises made by Troy Graft and Bert Dawson. Specifically, Obertance stated that while they were at the house Graft told her that "Bert [Dawson] said he would take care of everything." (Obertance Depo. 48). Obertance stated she then asked Graft about using Brad's and he told her to go ahead and call Brad's. (Obertance Depo. 48). She stated that she called Brad's that night and scheduled them to come the next day. (Obertance Depo. 56). Obertance also called Dawson directly and Dawson told her that he would take care of the clean-up of the basement. (Obertance Depo. 59).

{¶53} But that is not the only evidence on this matter. Later in her deposition, Obertance was questioned regarding whether she would have called Brad's for clean-up and remediation even if Graft and/or Dawson had not told her the County would pay for the repairs:

> Q.     Meaning even if the county - - even if the county hadn't said
> to you "We'll take care of it," there are certain things that Brad's did for you
> that you would have hired him to do, anyway?
>
> A.     Yes.

Case No. 20 CO 0031

Q.     Okay.  And that would include taking care of any remediation of the contaminated water?

A.     Yes.

Q.     That would have included making sure there was no issue with mold?

A.     Yes.

Q.     That would have included getting out all of the damaged and wet items from down in the basement?

A.     Yes.

* * *

Q.     Okay.  So coming in and getting all the water out and dried up, you would have paid him to do, anyways?

A.     Yes.

Q.     Even if the county hadn't offered to pay, correct?

A.     Yes.

Q.     You would have him do anything to get rid of the mold, even if the county hadn't offered to pay, correct?

A.     Now you keep saying mold.

Q.     To make sure there wouldn't be mold.

A.     Yes.

Q.     You would have him get rid of any damages, wet and destroyed items down there, correct?

A.     Yes.

Case No. 20 CO 0031

Q.     And that's even if the county hadn't offered to pay?

A.     Yes.

\* \* \*

Q.  Okay.  So is it fair to say that except for the cabinet issue, the upper cabinet issue, all the work that Brad's did for you, you would have had them do even if the county had never told you that they would pay for it.

A.  Yes.

(Obertance Depo. 120-123).

**{¶54}**   It is clear from Obertance's statements that whether or not the County made promises to pay for the work, she would have hired Brad's to clean and remediate the flood damage in the basement.  There is no evidence to the contrary.  Thus, plaintiffs cannot meet the reliance element of their negligent misrepresentation/promissory estoppel claim.

**{¶55}**   Accordingly, plaintiffs' sole assignment of error is without merit and is overruled.

**{¶56}**   For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 20 CO 0031

[Cite as *Rice v. Columbiana Cty. Bd Commrs.*, 2022-Ohio-2078.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**